# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| ALBERT NUZZI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:09 CV 116 |
| | ) |
| COACHMEN INDUSTRIES, INC. | ) |
| d/b/a COACHMEN RECREATIONAL | ) |
| VEHICLE, LLC, and | ) |
| CONSOLIDATED LEISURE | ) |
| INDUSTRIES, LLC, | ) |
| | ) |
| Defendants. | ) |

## OPINION and ORDER

Plaintiff Albert Nuzzi brought this action against defendants Coachmen Industries, Inc, Coachmen Recreational Vehicle, LLC, and Consolidated Leisure Industries, LLC, all of which are related business entities, alleging employment discrimination after he was laid off from his job with defendants. (DE # 1.) Defendants have now moved to dismiss and compel arbitration, arguing that plaintiff's claims are subject to binding arbitration. (DE ## 13-14.) Plaintiff has responded (DE # 17), defendants have replied (DE # 19), and plaintiff has filed a surreply (DE # 23). For the reasons explained below, the motion to dismiss and compel arbitration will be granted.

## I. BACKGROUND

   *A. Factual Allegations*

   Plaintiff began working for defendants in March of 2004. (DE # 1 at 2.) In the Spring of 2005, defendants adopted the "ACCORD program," a euphemism for their Employee Dispute Resolution program. (DE # 14 at 2.) This program required all employees to submit any future legal disputes they might have with defendants – with a few specific exceptions – to an arbitrator, who would make a binding decision on the matter. (DE # 14-3 at 1-2.) Accordingly, by agreeing to or accepting the program, defendants' employees gave up their rights to bring a lawsuit against defendants for nearly any employment-related issue. (*Id.*)

   This program was announced via a March 28, 2005 message from Bill Lenhart, one of defendants' senior human resources employees. (DE # 14-4.) After this message was sent, defendants presented the program to their employees, including plaintiff, by providing them with a revised employee handbook. (DE # 14 at 2-3.) A section of this handbook was entitled "ACCORD program" and outlined the details of the arbitration program, or, as the handbook referred to it, the "binding Employee Dispute Resolution Program." (*Id.* at 3; DE # 14-3 at 1.) This program covered "alleged violations of any federal, state and/or local law related to employment." (*Id.*) At the end of this section in the handbook, a bolded and underlined portion stated the following "By accepting or continuing employment with the company, you agree to have disputes with the

2

company and you (as set forth above) finally decided by binding arbitration, and you waive any right to a jury or court trial." (DE # 14-3 at 2.)

Included with the handbook was a form entitled "Acknowledgment of Receipt of Employee Handbook and Duty to Familiarize myself with its Contents" (the form) that contained a signature block at the bottom . (DE # 14-5.) In addition to language acknowledging the employee's understanding of the rest of the handbook, the form stated that either by signing below, or continuing to work for defendants, the employees indicated their acceptance of the ACCORD program. (*Id.*) Defendants have produced copies of the forms from April 2005 and March 2008 containing what plaintiff does not dispute is his signature. (DE ## 14-5, 14-6.) It is further undisputed that plaintiff continued to work for defendants after the initiation of the ACCORD program.

From December of 2007 to February of 2008, plaintiff took leave under the Family and Medical Leave Act (FMLA) in order to receive treatment for neurological clots that resulted in partial left arm paralysis and a speech impediment. (DE # 1 at 2-3.) In early October of 2008, plaintiff was approached by Coachman's Vice President, Les Thimlar, about the company's recent termination of George Radanovich, another employee who reported directly to plaintiff and who had filed a discrimination charge with the EEOC against the company. (*Id.* at 3.) In investigating the claim, Thimlar suggested to plaintiff that plaintiff had selected Radanovich for termination for performance reasons, but Nuzzi denied these statements. (*Id.*) Thimlar told plaintiff that he should reconsider his answers to Thimlar's inquiry and that he was expected to be a

company man. (*Id.* at 4.) On October 28, 2008, while on intermittent FMLA leave, defendants terminated plaintiff for missing work. (*Id.* at 3-4.) Plaintiff claims that he was terminated because of his age and his taking of FMLA leave. (*Id.* at 4-5.)

*B. Legal Arguments*

Defendants argue that plaintiff agreed to have claims like the ones raised in his current complaint addressed through binding arbitration. (DE # 14 at 4-6.) Specifically, they assert that plaintiff formed a "binding contract" with defendants by signing the acknowledgment form and continuing to work for them after they proposed the policy. (*Id.* at 7.)

Plaintiff responds that a contract was never formed, as defendants failed to offer any consideration because they are not bound to arbitrate legal issues raised by their employees. (DE # 17 at 5-6.) Further, plaintiff argues that the handbook gives defendants the power to rewrite the terms of the ACCORD program whenever they wish, making the contract "illusory" and thus unenforceable. (*Id.* at 7-8.) Plaintiff also states that the handbook improperly states that signing the acknowledgment at the end of the handbook was required in order to work for defendants, pointing to the purported fact that another employee, George Radanovich, did not sign an acknowledgment and continued to work for defendants. (*Id.* at 3.)

Defendants reply that the ACCORD program was a contract between them and plaintiff, and that the consideration was plaintiff's ability to continue to work for defendants. (DE # 19 at 2-9.) Further, they note that while they reserve the right to alter

4

the program, once an employee submits a matter for arbitration under the existing structure, they are bound, by their agreement, by the results of the arbitration. (*Id.* at 9-13.) Defendants also argue that plaintiff's argument regarding Radanovich's supposed failure to sign an acknowledgment has no bearing on the issues in this case. (*Id.* at 7-9.)

In his sur-reply, plaintiff contends that Indiana law holds that employee handbooks cannot form unilateral employment contracts. (DE # 23 at 1.) Plaintiff also states that Radanovich's continued employment despite his alleged failure to sign the acknowledgment shows that defendants misrepresented a material fact to its employees by stating that signing the acknowledgment was required in order to work for defendants. (*Id.* at 4.)

## II. STANDARD OF REVIEW

Defendants move to dismiss pursuant to FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6), asserting, respectively, that this court lacks subject matter jurisdiction, and that plaintiff has failed to state a claim upon which relief can be granted.

Regarding RULE 12(b)(1), "[s]ubject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further." *Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998); *see* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). When considering such a motion to dismiss, a court must accept as true all well-pleaded factual allegations and draws all reasonable

inferences in favor of the plaintiff, *Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698, 701 (7th Cir. 2003), although the plaintiff has the obligation to establish jurisdiction by competent proof. *Sapperstein v. Hager*, 188 F.3d 852, 855-56 (7th Cir. 1999).

Under RULE 12(b)(6), the court—again—accepts all factual allegations in the complaint as true, and draws all reasonable inferences in favor of the plaintiff. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 (7th Cir. 2000). Dismissal of a claim under RULE 12(b)(6) is proper only where it is clear from the complaint that there is no set of facts consistent with the allegations that would entitle the plaintiff to relief. *Hison v. King & Spalding*, 467 U.S. 69, 73 (1984).

In any event, although defendants cite RULES 12(b)(1) and (12(b)(6), their true contention is that this case should be dismissed and ordered to arbitration, pursuant to 9 U.S.C. § 4 of the Federal Arbitration Act (FAA). This statute allows a party to a written arbitration agreement to request an order from a federal district court compelling the parties to arbitrate. *See* 9 U.S.C. § 4. Furthermore, the FAA demonstrates that Congress supports "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Contr. Corp.*, 460 U.S. 1, 23 (1983).

### III. ANALYSIS

The question in this case is whether there was a valid written arbitration agreement between defendants and plaintiff regarding the ACCORD program. Federal courts rely on state contract law to determine whether an arbitration agreement constitutes a valid contract. *See Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126,

1130 (7th Cir. 1997). Under Indiana law, this court determines whether an arbitration agreement exists as it would do if evaluating any other purported contract. *ISP.com LLC v. Theising*, 783 N.E.2d 1228, 1232 (Ind. Ct. App. 2003). That means determining, specifically, whether there was an offer, acceptance, and consideration. *See Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996). Here, the updated employee handbook constituted the offer, laying out the terms of the program. Plaintiff contests whether there was adequate consideration.

As defendants explained in their handbook, employees, including plaintiff, indicated their acceptance of the ACCORD program by either signing the acknowledgment form at the back of the handbook, or by simply continuing to work for defendants. (DE # 14-3 at 1-2; DE ## 14-5, 14-6.) Defendants have provided copies of the acknowledgment forms signed by plaintiff. (DE ## 14-5, 14-6.) The handbook specified that employees accepted the program if they continued to work for defendants. (DE # 17-3 at 17.) It is uncontested that plaintiff continued to work for defendants for several years after the program was initiated, and a decision to continue working for an employer after such a mandatory program is implemented indicates acceptance. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir. 2002) (the FAA "does not require arbitration agreements to be written"); *DeGroff v. Mascotech Forming Technologies-Fort Wayne, Inc.*, 179 F. Supp. 2d 896, 904-05 (N.D. Ind. 2001) (employee's decision to continue to work for her employer after initiation of arbitration policy constituted acceptance of that policy); *Kreimer v. Delta Faucet Co.*, No. IP99-1507-C-TG, 2000 WL

7

962817, at *3 (S.D. Ind. June 2, 2002) (Indiana law does not require that an arbitration agreement has to be signed); *see also Anderson v. Indianapolis, Ind. AAMCO Dealers Adver. Pool*, 678 N.E.2d 832, 836 (Ind. Ct. Appl. 1997) (when "a party receives the benefit of a contract for a period of time, he cannot later disavow its validity"). Thus, by continuing to work for defendants after they initiated the program, plaintiff indicated, legally at least, his acceptance of it.

Plaintiff also complains that defendants gave no consideration, that they are asking their employees to give up certain rights, and that they are not providing a benefit in return. However, the facts of this case and existing case law refute this argument. In the employee handbook, defendants stated that "the Company requires, as a condition of, and in consideration for, your continuing at-will employment with the Company, participation in ACCORD." (DE # 17-3 at 16.) Thus, defendants made plain in its offer that the "consideration" it was offering employees for their acceptance of the program was the opportunity to continue working. And Indiana courts recognize that "[a]n employer's promise to continue at-will employment is valid consideration" to support a binding agreement with an employee. *Ackerman v. Kimball Interational, Inc.*, 634 N.E.2d 778, 781 (Ind. Ct. App. 1994); *see also Gibson*, 121 F.3d at 1131-32. Accordingly, defendants' allowing plaintiff to continue to work for them constituted adequate consideration to support the contract.

Plaintiff raises this same argument in a slightly different manner when he contends that the arbitration agreement is unenforceable as there is no "mutuality of

8

obligation," because defendants can alter the terms of the agreement at any time. (DE # 17 at 7.) To clarify, this argument is simply another way of saying that the agreement lacked consideration, because defendants gave nothing up. This contention depends on the portion of the employee handbook where defendants reserve the right to "terminate the program or amend its procedures as it deems appropriate from time to time, by written notice, provided that this shall not affect disputes already submitted." (DE # 14-3 at 1.)

However, the fact that the employer is willing to give up its own legal right to defend itself in court, and submit its defense to arbitration, constitutes consideration. *See Kreimer*, 2000 WL 962817 at *3 ("consideration can also be found by way of [the employer's] agreement to be bound by the arbitrator's decision"); *see also Tinder v. Pinkerton Security*, 305 F.3d 728, 734 (7th Cir. 2002) (under Wisconsin law, "[a]n employer's promise to arbitrate in exchange for an employee's promise to do the same constitutes sufficient consideration to support the arbitration agreement"); *compare Gibson*, 121 F.3d at 1128, 1131 (no consideration and thus no enforceable arbitration agreement when employer refused to be bound by results of arbitration). In this case, defendants' agreement binds them to the results of arbitration (DE # 17-4 at 4), and they may not alter the terms of the agreement after a complaint has been submitted. (DE # 14-3 at 1.) By agreeing to be bound by an arbitration, and to not revise matters already initiated, defendants have demonstrated some mutuality of obligation. *See Tinder*, 305 F.3d at 736 (rejecting claim that employer's arbitration promises "were illusory because

[the employer] reserved the right to modify or terminate its policies at any time"); *Curry v. Midamerica Care Found.*, No. 02-0053-C T/H, 2002 WL 1821808, at *5 (S.D. Ind. June 4, 2002) (rejecting claim that because employer could revise the arbitration agreement prior to the initiation of any proceeding, that arbitration agreement was invalid).

Plaintiff's surreply contends that Indiana law prevents employers from using their employee handbooks to form unilateral contracts. (DE # 23 at 1.) This argument misconstrues Indiana case law. Specifically, in arguing this point, plaintiff cites to *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712 (Ind. 1997), and *Hayes v. Trustees of Indiana University*, 902 N.E.2d 303 (Ind. App. 2009). In both of these cases, at-will employees attempted to sue their employers, unsuccessfully arguing that employee handbooks created an enforceable employment contract between them and their employers. *See Orr*, 689 N.E. at 718-720; *Hayes*, 902 N.E.2d at 312-13. That is far from the case here, where an employer is seeking to enforce an arbitration agreement it specifically promulgated. (*See* DE # 14-5.) Further, *Orr* itself noted that its holding depended, at least in part, on the absence of consideration offered by the employer. *See Orr*, 689 N.E.2d at 719-20. It was this lack of consideration that made the contract unilateral, or one-sided. Here, in contrast, defendants offered the consideration of continued employment and agreed to bind themselves to the decision made by the arbitrator. Thus, the contract at issue in this case is not unilateral. *See* BLACK'S LAW DICTIONARY 326 (7th ed. 1999). Finally, this argument ignores the numerous cases from Indiana's federal courts that have upheld arbitration agreements in circumstances

10

nearly identical to this case. *See Wilkerson v. Serv. Corp. Int'l, SCI*, No. IP 02-0982-C, 2003 WL 21052128, at *1-*2 (S.D. Ind. Apr. 2, 2003); *Curry*, 2002 WL 1821808 at *1; *DeGroff*, 179 F. Supp. 2d at 898-99; *Kreimer*, 2000 WL 962817 at *1. This case law indicates that Indiana employers can legally institute binding arbitration programs, such as the one here.

Plaintiff's final argument is that defendants misrepresented a material fact to their employees by stating in the handbook that signing the acknowledgment at the end of the handbook was required in order to work for defendants. Plaintiff purports to support this argument by alleging that another employee, George Radanovich, did not sign the agreement and was allowed to continue his employment with defendants. (DE # 17 at 3; DE # 23 at 4.) This argument is meritless and irrelevant. As explained above, an employee could manifest his or her assent to binding arbitration by signing the acknowledgment form *or* by continuing to work for defendants. The fact that another employee purportedly did not sign his acknowledgment form does not mean that that employee did not assent through continuing to work for defendants. In any event, whether another employee signed his acknowledgment form has no bearing whatsoever on the issues before the court in this case.

**IV. CONCLUSION**

The court holds that the arbitration agreement between plaintiff and defendants is valid and enforceable. This agreement required the claims raised by plaintiff in this case to be submitted to arbitration. (*See* DE # 14-3 at 1.) Accordingly, defendant's motion (DE # 13) is **GRANTED**. This case is **DISMISSED** and plaintiff is **ORDERED** to

submit his claims against defendants to binding arbitration pursuant to the ACCORD program contained in defendants' employee handbook. *(See* DE # 14-3 at 1-2.)

**SO ORDERED.**

**DATED:** November 16, 2009

 s/James T. Moody  
JUDGE JAMES T. MOODY  
UNITED STATES DISTRICT COURT